## Southeastern Telephone Co. v. Fidelity & Casualty Co. of New York.

(Decided Feb. 11, 1933.)

H. C. CLAY & SONS for appellant.

JERRY A. HOGAN and WILLIAM A. HAMM for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

The appellee, the Fidelity & Casualty Company of New York, on June 25, 1932, issued its policy of indemnity insurance, for a period of one year, to the appellant, Southeastern Telephone Company, by which it undertook to insure the appellant telephone company against loss from liability imposed by law upon the insured for damages on account of bodily injuries accidentally sustained by any person, occurring during the policy period, by reason of the use of its two trucks and a Ford coupé (described in the declarations of the

policy), subject to the conditions and limitations stated in the policy. One of these conditions named was the following provision, requiring the insured to give prompt written notice of the occurrence of any accident:

"Notice B. The Insured upon the occurrence of an accident shall give prompt written notice thereof with the fullest information obtainable at the time to the Company at its home office, or to its duly authorized agent. The Insured shall give like notice of any claim and of any suit on account of an accident, and shall forward to the Company promptly at its home office every summons or other process and papers connected with such claim or suit. The company reserves the right to settle any claim or suit. Notice given by or on behalf of the Insured to any authorized agent of the Company with particulars sufficient to identify the Insured shall be notice to the Company. Failure to give any notice required to be given by this policy within the time specified therein shall not invalidate any claim made by the Insured if it shall be shown not to have been reasonably possible to give such notice within the prescribed time, and that notice was given as soon as was reasonably possible."

On October 24, 1932, following the issuance of this policy, one Charlie Payne claimed to have been on that day accidentally injured by being struck, while traveling on "Sublimity Road" in Laurel county, by a pike pole projecting from one of the telephone company's "trucks," which was being driven by the company's agents, while engaged in repairing its telephone line along that road.

With respect to the matter of the insured's giving to its insurer the "notice B" required of the occurrence of this accident and the reports given to and received thereof by the telephone company, the facts appear to be practically agreed upon and are as they are both alleged in the appellant's petition filed in this action and related in the testimony of the witnesses, including that of Mr. Mathews, the telephone company's manager in charge of its main district office, located at London, Laurel county, Ky.

Thus by the record it may be taken as admitted that it is shown that Mr. Payne, upon receiving this accidental injury on October 24, 1932, at once proceeded on to London to have an examination made of his injury by his doctor, from whose office he, while waiting for an examination, telephoned Mr. Mathews (the manager, as stated, of the telephone company), at his office, notifying him of the occurrence of the accident suffered that afternoon, wherein he had been injured, while traveling on ''Sublimity Road,'' by being struck and knocked off the road by one of the company's trucks. Upon being asked by Mathews as to how badly he was hurt, Payne replied that he wouldn't know until after an examination was made of his injury by the doctor, when Payne was then asked to let him (Mr. Mathews) know the extent of his injury, when determined by the doctor.

Mr. Mathews testifies, and the petition alike in this action alleges, that several days after this telephone talk was had, Mr. Payne came to see him at his office, when he again asked Mr. Payne if he was seriously injured, and to describe to him his injuries, to which Payne replied that he didn't know as yet how serious they were, but wanted to know if the company was going to pay him for the injury which had been done him and continued to insist that he had been injured by a truck belonging to the company, which on this occasion had struck him. Mr. Mathews further testified that he had, when thus informed of the accident, investigated the matter of its occurrence and the resulting injury to Payne, of which he had telephoned on October 24, 1932, and that he had learned from his inquiry made that the company did not have any of its trucks or automobiles in use in Laurel county on that day and that, from such information received, he had concluded that Payne was mistaken in his belief that the truck, of which he complained as having struck him, was one owned and operated by his company and that he thought the truck possibly belonged to the utility company there; that when he told Payne of his having reached this conclusion, Payne replied that he didn't know about that, but that he would find out and let him know. Further he stated that the company at that time maintained, for its use in the operation and maintenance of its telephone lines and business in the Laurel county district, two trucks

and three automobiles, of which two trucks and one of the automobiles (a Ford coupé, 1929 model, the car involved in this action) were covered by the public liability insurance policy issued his company, as stated supra, on June 25, 1932, by the appellee.

When the witness Mathews was asked why he didn't give notice to the insurance company, as by the policy required, of. this claim made by Payne that he had been struck and injured by the reported accident, he replied that he didn't because he thought Mr. Payne was mistaken about whose truck it was that hit him, as he had discovered and knew the company didn't have any of its trucks in Laurel county, wherein the accident occurred, on that day. He stated also that as he had never heard anything further from Mr. Payne about the accident, as to which he had promised to report further, he concluded that Mr. Payne had found out that the truck that struck him belonged not to his, but to some other company, until he received a letter from Mr. Johnson, written as attorney for Mr. Payne, dated November 21, 1932 (addressed to the appellant company at London), advising it that:

"We have a matter against your Company, in which one Charlie Payne was injured by being struck by a pike pole which was being hauled on one of your trucks and this injury occurred on the Sublimity Pike about three miles west of London, Kentucky, in the month of October. We are writing you this letter for the purpose of trying to get a proper settlement without suit * * *."

Witness states that he replied to this letter demanding settlement on November 23, 1932, as follows:

"In reply to your letter of November 21, Mr. Payne called the writer one day in October and advised him that he had been struck by a pole on one of our trucks that day. The writer investigated the matter then and found that the only truck we have here was in Barbourville that day, and that none of our employees had been out on the Sublimity Pike on that day.

"We believe that the Kentucky Utilities Co. and the Bell Telephone Co. both have lines that run

in that direction, and it might possibly have been a truck of one of these companies.''

He states that the next time he heard of Payne's accident and alleged injury was on December 24, 1932, when a summons issued in a suit filed by Payne on November 29th was served on him; that he immediately wrote the local agents of the insurance company in London, to whom he carried the letter, with the inclosed summons, which they at once mailed to the insurance company at its home office in New York. A carbon copy of this letter, introduced in evidence by appellant, is as follows:

''Southeastern Telephone Company, Incorporated.
''London, Kentucky, December 24, 1932.
''Edwards and Eversole, Agents,
''The Fidelity and Casualty Company of New York,
''London, Ky.
''Gentlemen:

''Attached hereto is summons of suit filed against this company, by one, Charlie Payne, in the amount of $20,000.00. Mr. Payne alleges that on Oct. 24th, 1932, a truck of this Company carrying spike poles, extending over the side, passed him on the Sublimity Pike; that he was walking on the right side of the pike, and that one of the spike poles struck him causing permanent injury.

''The petition does not state what truck, who was driving it, nor gives any other information to enable us to ascertain which of our motor vehicles that was supposed to have struck Mr. Payne.

''We have two trucks and one car that are used in construction and repair work, all of them are covered with property damage and public liability insurance with your company * * *

''On the date that Mr. Payne alleges to have been injured, (in Laurel County) the only car that was in this county was the Ford coupé, our employee driving this car on that date advises. that the car was not on the Sublimity Pike that day.

''Please advise us in regard to this matter.''

These several reports made to the telephone company of the accident befalling Mr. Payne—the first,

telephoned it by Payne on the day when struck by the company's Ford coupé on October 24, 1932; the second, when demand was made by Payne personally on the company several days later for payment of his alleged injury received in that accident; the third, the later letter received from Payne's attorney, of date November 21; and the fourth or final notice of the occurrence of the accident received by the insured before attempting to comply with the policy requirement of promptly notifying the appellee of the occurrence of an accident and the service of summons upon the company, claimed by it to have been issued against it on December 24, in the suit finally brought and filed by Payne against the company, after these several unavailing notices given and claims made for recovery of damages, of something over $20,000, for injuries alleged sustained by being struck by its truck—are all admitted.

It is not contended by the telephone company that any notice was given the insurance company pursuant to the notice provision of the policy, as set out supra, of the occurrence of the accident, notwithstanding these earlier reports, notices, and claims made to and upon Mr. Mathews, the then manager of the company's office at London; nor does it contend that any notice was given the insurance company until Mr. Mathews was served with summons in the suit brought to recover damages for the injuries alleged received in the accident by Payne on December 24, 1932.

Upon copy of this summons, with explanatory letter, being then delivered by the telephone company to the insurance company's local agents at London and by them forwarded to the insurance company's New York office, it replied on January 3, 1933, acknowledging receipt of letter and summons and accepting the summons served on the telephone company's manager, Mathews, through its attorney, with reservation of its rights under the policy, in the suit brought by Charlie Payne against the telephone company in the Laurel circuit court.

Further it is shown that the insurance company then referred the matter of the belated notice and claim to its legal representative at London, who, after making an investigation of the accident, wrote the tele-

phone company on January 19, 1933, the following letter:

"I am authorized to notify your Company, and this is to notify you, that in view of the fact that your company totally failed to report the alleged accident, and alleged injury of Charles Payne, at the time and place he was injured, until after suit was filed against your said company in the Laurel Circuit Court, and in view of the fact that on the day said Payne was injured, or claims to have been injured, or soon thereafter, and on the 24th day of October, 1932, said Payne notified your company that he was injured and made demand for settlement for his injuries, and same was not reported to said Insurance Company, The Fidelity and Casualty Company of New York, and in view of the fact that thereafter, and on or about the 21st day of November, 1932, R. S. Johnson, attorney for the said Charles Payne, notified your company in writing that said Payne had been injured and therein demanding settlement and payment for his alleged injuries, and your company failed to notify the undersigned Insurance Company of that notification, and failed to notify said Company or any of its agents or attorneys of said injuries, and failed to do so until after the filing of an action in the Laurel circuit court for said injuries against your Company, and for other and various reasons not herein specified, you are notified that your said Company has violated the terms and conditions of said policy contract, and that the said undersigned The Fidelity and Casualty Company is not under any obligations to either defend said suit filed against you, and is not under any obligations and is not bound to pay any judgment that might be recovered against you, and said Insurance Company is not liable in any way or manner under or by virtue of said insurance policy contract, and for that reason you should, if you desire to do so, make defense to said action by and through your personal counsel, and not depend or rely upon the undersigned to do so."

Thereupon the appellant employed counsel to defend the action brought by Payne against it. Upon its

trial, in the Laurel circuit court, a judgment was recovered against the defendant company for the sum of $225 and costs. Upon the company's application to the court of appeals for an appeal therefrom, the appeal was granted and the judgment reversed.

Upon the remand and second trial of the cause, a judgment for $250 with costs was recovered against the appellant. Application was again made for an appeal, which was by us denied and the judgment affirmed.

Thereupon, the appellant being called on to pay the full amount of said judgment, interest, costs, and an attorney's fee of $200 in the defense of said action and appeals, amounting to the sum of $685.11, it brought this action against the appellee insurance company, asking recovery of this amount, incurred and adjudged against it in the defense of this claim, which it contended was properly the obligation of the appellee under the terms of the indemnity policy issued it and herein sued on.

The insurance company filed answer, admitting all of its allegations, save and except that the plaintiff had complied with the requirements of the notice provision of the policy, which are, as set out supra, that:

> "The Insured upon the occurrence of an accident shall give prompt written notice thereof with the fullest information obtainable at the time to the Company * * *. The Insured shall give like notice of any claim and of any suit on account of an accident, and shall forward to the Company promptly at its home office every summons or other process and papers connected with such claim or suit."

And it therein alleged that plaintiff had observed or complied with only the last-named one of these notice requirements of the policy.

To this answer reply was filed, joining issue upon the question of the sufficiency of the notice given the insurance company as constituting a compliance with the further requirement of the notice provision of the policy, to the effect that:

> "Failure to give any notice required to be given by this policy within the time specified therein shall not invalidate any claim made by the Insured if it

shall be shown not to have been reasonably possible to give such notice within the prescribed time, and that notice was given as soon as was reasonably possible.''

Upon the trial of this cause, upon the issues thus joined, the defendant insurance company moved at the conclusion of the introduction of all the evidence for a directed verdict, which the court sustained, and upon the verdict of the jury rendered as directed for the defendant judgment was accordingly entered, dismissing the petition of plaintiff with costs.

Motion and grounds for a new trial were thereupon filed to set aside the verdict and judgment and grant a new trial, on the grounds that the court erred in sustaining the motion of defendant for a peremptory instruction and instructing the jury to find for defendant, which were overruled but an appeal granted, which has been prosecuted and is now before us.

It is agreed that there is only one question involved in this appeal, and that is whether or not the notice required by the general provision, ''Notice B'' of the policy, was complied with by the appellant, and which was the only issue considered, it appears, by the learned chancellor on the trial of this cause.

The appellant in its brief states that such is the question here submitted, but adds thereto, ''or if it was not complied with, was there a waiver of such notice? There is no question raised by appellant as to the issues of the pleadings. It is only as to the issues of the evidence to support the allegations of the petition, and the first question is: Was the notice given to appellee within the limit of time provided for by Section 'B' of the policy?''

The appellant, in its argument of this question, proceeds to set out the showing made by the evidence as to the several notices given the telephone company by the aforesaid Charlie Payne of his injury by one of the company's improvised trucks between the day of its occurrence on October 24, 1932, and the appellant's finally notifying the insurance company of the accident, more than two months thereafter, on December 24, when it was summoned in the suit filed against it for the recovery of damages for the injuries alleged sus-

tained therein and attempts to account for its failure to earlier give written notice of the occurrence of the accident to the insurance company on the ground stated in Mr. Mathews' testimony, that he thought, when these claims were made by Payne and his attorney for damages, that same were based upon a mistake made as to his having been struck by a truck belonging to the telephone company, for the reason that he had ascertained that no one of the company's trucks was being used in Laurel county on that day and by the driver of the company's Ford coupé that same was not on the day of the accident, October 24, 1932, in the vicinity of "Sublimity Road," where Payne was alleged to have been struck.

It is further argued that with such information he (Mathews) concluded that Payne's claim to damages for injuries suffered by him in being struck by one of the company's trucks could not be meritorious, for the reason that the company's trucks being out of the county on the day of the accident, as claimed, he could not have been injured by one of them. He claims, therefore, that such being the reason and cause of his delay, in viewing the claim made by Payne for damages as having no basis whatever, he did not feel it proper or that he was called upon to notify the company of it, in that he treated the facts stated as being and constituting a valid excuse for not giving immediate notice to the insurance company of the claim until he was served with the summons, when notice of the suit and summons filed was immediately sent the company and, under the circumstances stated, constituted sending notice within the provisions of the policy, "as soon as reasonably possible."

Without further considering these matters urged by appellant in excuse of its dereliction and negligence, in failing to comply with the notice requirements set out in the policy and by letting pass these several notices received without seeing fit to pass on to the insurer notice of the fact of the occurrence of the accident and the claim made thereunder by Payne for damages owing him by the company, nor the extensive arguments and the various grounds upon which the respective claims of the parties hereto are presented, it is sufficient to say that these evidential facts, as above recited, when considered and measured by the notice requirements of

the policy, cannot be regarded as or held to be a reasonably satisfactory compliance on the part of appellant with them.

To such effect was it held in the case of Southern Surety Co. of New York v. Heyburn, 234 Ky. 739, 29 S. W. (2d) 6, 7, cited and relied on by the appellee, where there was before us a very similar case and policy provision, requiring immediate notice to be given to the liability insurer, wherein we said:

"As to these conditions, the general rule has been established that the insured is not required to report trivial accidents which result in latent injuries or petty wounds, and there was no reasonable ground to believe at the time that an injury had been received."

But we further therein said that:

"It is to be readily admitted that in cases resting upon policies of indemnity of this character the interpretation should be more rigid or exact and the rule should be more strictly enforced than in cases resting upon fire insurance policies or ordinary accident policies covering disability or injury of the person insured. In the latter cases the liability becomes fixed immediately upon the occurrence, while in this class the very nature of the indemnity requires prompt investigation and preparation for a defense to the possible litigation by the one who shall or might be, through his contract, forced to become the real defendant, for with passing time the discovery of witnesses becomes more difficult, physical conditions change, memory becomes less sure, facts become distorted, and 'more dangerous than all, fraud and cupidity have had opportunity to perfect their work.'

"Undisputed facts may appear where the court should as a matter of law hold that the occurrence was so trivial the insured was not required to report it to the company, even though apparently casual or latent injuries subsequently developed to be serious ones. On the other extreme, there may be accidents of such magnitude, or injuries of such degree, apparent or disclosed at the time, as would authorize a holding as a matter of law that they

should have been reported in order to place liability on the insurance company and recover under the policy.''

Influenced by these considerations, it was finally announced in the Heyburn Case, supra, that:

"The true rule, it seems to us, must be declared to be that notice is an essential requirement in order to fix liability on the insurer when there has been such an occurrence or accident as would lead the ordinarily prudent and reasonable man to believe that it might give rise to a claim for damages. Such is the fair and reasonable construction to be give the condition of the policy and the principle upon which all the cases cited were determined.''

Applying this rule to the case at bar, it clearly follows that here the injury complained of was of such character that suit was very reasonably to be expected, unless some adjustment or settlement of the injury claim was made.

In such case, under the holding of this quoted Heyburn Case, we are constrained to hold that the judgment of the circuit court, in sustaining the insurance company's motion for a directed verdict in its favor, was altogether correct; and its judgment is therefore affirmed.